RENDERED: FEBRUARY 3, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1213-MR

ALLSTATE PROPERTY AND
CASUALTY INSURANCE
COMPANY                                                                APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE A. C. MCKAY CHAUVIN, JUDGE
ACTION NO. 19-CI-005034

BRITTANY BROWN                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND COMBS, JUDGES.

CALDWELL, JUDGE: Allstate Property and Casualty Company ("Allstate")

appeals from a Jefferson Circuit Court judgment ordering it to pay Brittany Brown

penalty interest and attorney fees for delays in paying basic reparations benefits

under the Kentucky Motor Vehicle Reparations Act ("MVRA"). We affirm.

## FACTS

Brown was involved in an automobile accident in late January 2019. She was a listed driver and the vehicle she had been driving was a listed vehicle under a policy issued by Allstate. She submitted a claim for basic reparation benefits ("BRB") and retained counsel. Brown directed that her personal injury protection ("PIP") benefits be reserved to pay for treatment by certain medical providers, prescription medication, and lost wages rather than for hospital or emergency care. In early February 2019, her counsel stated in a letter to Allstate that payments "may" be made directly to the indicated providers.

For a couple of months starting in early February 2019, Allstate received bills from Brown's medical providers. In late February 2019, Allstate requested that Brown submit to an examination under oath ("EUO"). Brown agreed to do so. But her counsel sent a letter (dated March 11) indicating that immediate payment was expected and that interest would accrue on overdue payments – at 12% on outstanding bills starting immediately and increasing to 18% after the EUO. Counsel also stated payments for PIP and interest should be made directly to Brown and forwarded to counsel's attention.

The EUO took place on June 14, 2019. On or around August 5 and 8, Allstate made payments directly to Brown's medical providers – apparently

unbeknownst to Brown and counsel. The payments were for amounts less than the amounts billed, but also included 12% interest according to Allstate.

On or about August 9, Brown's counsel emailed Allstate's counsel and adjustor to inquire about the status of payments. No response was received for several days. Brown filed suit against Allstate on August 19.

Allstate received service of the complaint on August 22. On that same day, the adjustor responded to Brown's counsel's email with a log of the PIP payments made directly to the providers. The log showed some reductions and denials and indicated 12% interest was paid to the providers.

After Allstate filed its answer and discovery occurred, both parties filed motions for partial summary judgment. The trial court granted Brown's motion and denied Allstate's motion in an October 2020 opinion and order.

The trial court determined that Allstate failed to show a reasonable foundation for its delay in making payments and that penalty interest should be paid to Brown. It ordered Allstate to pay interest of 12% *per annum* from March 14, 2019, through June 14, 2019, and 18% *per annum* from June 14 through August 8, 2019. And it ordered Allstate to pay Brown's reasonable attorney fees from June 14, 2019, through May 19, 2020 – from the date of the EUO until final submission of summary judgment motions upon completion of briefing and oral argument.

Following the trial court's order resolving the summary judgment motions, the parties briefed issues about the amounts to be paid. They presented arguments about whether the interest to be paid should be calculated on amounts originally billed or on the reduced amounts actually paid to medical providers and accepted as full satisfaction of the debt. (Brown submitted medical bills totaling just over $10,000 and Allstate made payments to medical providers totaling about $6,800 according to the PIP payment log.)[1]

The trial court determined that the interest to be paid would be calculated based on the amounts paid to and accepted as full satisfaction by the medical providers rather than on the amounts originally billed.[2]

The parties had also offered arguments and proof about the amount of attorney fees to be paid, which the trial court resolved in the same order. Brown had requested $20,391 in attorney fees for her attorneys' time spent on the case beginning with the June 14, 2019, EUO, and extending through mid-December

---

[1] Brown had also argued that she was entitled to additional benefits of about $3,000 since Allstate paid only $6,800 to providers for medical bills. But we are unaware of any resolution of this issue. Instead, the trial court's October 2020 and September 2021 opinions and orders only resolved issues about interest and attorney fees. And the parties have only made arguments about interest and attorney fees in their appellate briefs.

[2] The trial court ordered interest paid to Brown based on the "amount" paid to the "provider" and accepted as satisfaction of the debt. (Page 5 of September 2021 opinion and order, Record ("R.") p. 510.) But Brown directed that her BRB benefits be used to pay multiple providers – who billed various amounts adding up to just over $10,000. We construe the trial court's reference to the amount paid to the provider as the total sum of amounts paid to providers and accepted as satisfaction of the debt owed to them – about $6,800 according to the PIP log.

2020. She attached an affidavit from counsel about the firm's hourly rates and a spreadsheet with billing entries from June 14, 2019, through December 14, 2020. (Briefing was completed and the case was submitted for final adjudication on December 15, 2020.) Allstate argued, *inter alia*, that the amount of attorney fees requested was not reasonable on various grounds and that any time entries after May 19, 2020, should be excluded under the October 2020 order.

The trial court concluded that the amount requested by Brown for attorney fees was reasonable and ordered Allstate to pay the full $20,391 in attorney fees that Brown requested. The trial court entered its opinion and order resolving the issues about interest and attorney fees in September 2021.

Allstate filed a CR[3] 59.05 motion, which included a request to amend to state that the trial court's order was final and appealable. The trial court granted the request to designate its order as final and appealable but otherwise denied the CR 59.05 motion. Allstate then filed a timely appeal.

On appeal, Allstate argues that the trial court erred in deciding that Allstate had no reasonable foundation for delaying payment and must pay penalty interest to Brown. It also argues the trial court erroneously awarded attorney fees.

---

[3] Kentucky Rules of Civil Procedure.

## ANALYSIS

## Due to Lack of Preservation Statement, We Review for Manifest Injustice

Allstate's brief does not "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v).[4] Due to this failure to provide the required preservation statement, we have the authority to review the issues on appeal only for manifest injustice rather than under otherwise applicable standards of review. *See Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("[T]he manifest injustice standard of review is reserved only for errors in appellate briefing related to the statement of preservation. If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved.").

Preservation statements are required "so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). Without the required specific statement about how and where in the

---

[4] CR 76.12(4)(c)(v) was in effect at the time appellate briefs in this case were filed. A nearly identical provision about requiring preservation statements is contained in the new Rules of Appellate Procedure ("RAP") effective January 1, 2023. *See* RAP 32(A)(4) (An appellant brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.").

record each argument was presented to the trial court, we are not confident such issues were properly presented to the trial court. And we are not required to search the record to discover if each argument was preserved for review. *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). *See also Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky. 2003).

Allstate provided some, not always accurate, page number citations to the written record about some matters in its statement of facts and argument sections of its appellant brief. But it did not specifically identify where each issue raised on appeal was presented to the trial court for consideration. Thus, we will treat the issues on appeal as unpreserved and review only for palpable error resulting in manifest injustice. *See* CR 61.02; *see also Mullins v. Ashland Oil, Inc.*, 389 S.W.3d 149, 154 (Ky. App. 2012) (conducting "a limited review of this case for manifest injustice" due to lack of preservation statement along with other substantial failures to comply with appellate briefing rules).

**No Manifest Injustice in Trial Court's Award of Interest**

Allstate raises several complex issues regarding the trial court's award of interest to Brown in its appellant brief. However, without a preservation statement clearly identifying where each of these specific issues was presented to the trial court, it is not appropriate for us to consider these specific issues. *See*

*Oakley*, 391 S.W.3d at 380.  Instead, we generally review whether the trial court's award of interest resulted in manifest injustice under CR 61.02.

Before Allstate filed its answer, Brown filed a motion for a default judgment[5] in which she claimed entitlement to about three hundred dollars based on 12% interest on bills not paid within thirty days of submission and 18% interest on bills paid to date from June 14 through the early August dates of payment (on the 5th and the 8th).  She indicated the amount due might increase based on interest accruing on unpaid bills to a provider.  In a supplemental filing, she stated the earlier amount was erroneously calculated based on what Allstate actually paid providers and asserted she was actually due almost five hundred dollars based on what the medical providers originally billed.

Ultimately, the trial court ordered Allstate to pay Brown interest of about 12% *per annum* accruing for three months and 18% *per annum* accruing for about two months on the amount (about $6,800) that Allstate paid providers. Given the relatively small amount of interest at stake versus payment delays

---

[5] Brown did not obtain a default judgment and the parties did not discuss default judgment issues in their appellate briefs.  Nonetheless, her requested relief for default judgment purposes provides context about the approximate amount of money at stake in interest issues here.

frustrating the MVRA's goal of encouraging prompt payment of accident victims' medical bills,[6] the trial court's award of interest did not result in manifest injustice.

The MVRA clearly calls for insurers to either pay benefits quickly – generally within a month or two of receiving reasonable proof of the fact and amount of loss – or to promptly provide the claimant with written notice of why the claim is being denied. *See* KRS 304.39-210(1) and (5).[7] Medical bills are presumed reasonable. KRS 304.39-020(5)(a). And case law holds that submission of medical bills along with written authorization to obtain medical reports is considered reasonable proof of the fact and amount of a loss regarding medical costs. *Kentucky Farm Bureau Mut. Ins. Co. v. Roberts*, 603 S.W.2d 498, 499-500 (Ky. App. 1980) (concluding insurer received reasonable proof of loss as of the date when medical bills were received along with "a completed medical authorization form").

From February to April 2019, Allstate received bills from the medical providers for whose care Brown had directed her PIP benefits be paid. Allstate has

---

[6] *See* Kentucky Revised Statutes ("KRS") 304.39-010(3) ("To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation[.]").

[7] This does not mean that insurers (otherwise known as reparations obligors) must always pay the full amount of medical bills charged. Under KRS 304.39-245, "A reparation obligor may request or negotiate a reduction or modification of charges from a provider of services to a secured person" although the medical provider cannot bill the secured person (the claimant) for the reduction or modification.

not argued that Brown failed to provide any requested authorization to receive providers' reports, nor did it file a petition to obtain court-ordered discovery of medical matters. *See* KRS 304.39-280(1)(b) and (3); KRS 304.39-270. Allstate clearly did not pay the bills within a month or two of receiving them and the record does not clearly indicate that it sent a prompt written notice of a reason for denial. *See* KRS 304.39-210(1) and (5).

Instead, Allstate made payments to providers in early August 2019 – about six months after being advised Brown had obtained representation and receiving the first bills from providers. Allstate indicated these payments for lesser amounts than originally billed also included 12% interest, thus admitting the payments were overdue. And it did not inform Brown's counsel about the payments until about the same time it received service of the complaint.

Allstate has argued that it could properly hold off on paying medical bills until it had a chance to review the transcript of Brown's EUO. But our Supreme Court clearly held that examinations under oath to obtain medical information in this context are not authorized. Instead, such medical information must be obtained through shared documentation or through petitioning the court for discovery of medical information under the MVRA. *See State Farm Mutual Automobile Insurance Company v. Adams*, 526 S.W.3d 63, 68 (Ky. 2017*).*

In *Adams*, our Supreme Court noted that the insurer identified four problematic issues – including some distinctly non-medical issues such as whether a hit-and-run occurred – prompting it to seek an examination under oath. *Id*. (And initially, the insurer made medical payments promptly in *Adams* before identifying the problematic issues prompting the EUO.) In contrast, the insurer here articulated no clear reasons for suspicion or further investigation before declining to make medical payments and requesting an EUO.

Furthermore, our Supreme Court discussed how discovery on some of the problematic issues identified in *Adams* (such as information about the accident itself) could be properly sought through requesting an EUO. But it made clear that medical information must be sought as set forth in MVRA provisions. *Id*. at 68.

Brown, unlike Adams, agreed to the requested EUO. But Brown's counsel made it clear in correspondence that while his client would cooperate with the EUO request, medical bills were expected to be paid within thirty days of receipt – even if that was before the EUO was completed. And generally, an insurer's duty to pay medical bills within thirty days of receipt of reasonable medical proof (*i.e.*, bills and medical authorization) is not excused simply because the insurer claims to be investigating or seeks an EUO for unspecified reasons.

We are aware that Allstate claims that the EUO turned out to be useful as it somehow discovered from its investigation that some treatment was not

properly medically supervised or otherwise improper, resulting in its denial of payment for such services.  But other than the supposedly improperly conducted treatment (a medical, non-accident-related issue for which information should have been sought under the means provided in the MVRA under *Adams*), Allstate has offered no justification for the delay in making payments on medical bills – most of which it ultimately paid at a reduced rate supposedly along with 12% interest.

We do not believe insurers may validly extend their thirty-day deadline for paying medical bills (presumed reasonable under the MVRA) upon receipt of reasonable proof (bills and medical reports and/or authorization) without petitioning the court for further medical discovery simply because the insurer chooses to conduct a fishing expedition through requesting an EUO.  While the insurer may certainly request an EUO for certain purposes, that does not mean that its duty to promptly pay medical bills under the MVRA does not arise until the EUO is completed and transcribed.  Though insurance policy provisions may state that submitting to questioning under oath is a condition precedent to coverage, the Supreme Court only specifically approved treating the EUO as a condition precedent to coverage where the EUO was sought, at least in part, to obtain non-medical, accident-related information.  *Adams*, 526 S.W.3d at 68 ("State Farm should have pursued any medical-related questions through the provisions of the MVRA.  Because some of the issues listed by State Farm involved the acquisition

of accident-related information, the circuit court correctly found that Adams was required to submit to questioning under oath regarding those issues as a condition precedent to coverage.").

Also, no one has directed our attention to where in the record a transcript of the EUO may be found so that we could see whether it concerned permitted matters about how the accident happened rather than medical information which must be obtained through other means under the MVRA. *See id*. So, we must assume the missing EUO transcript would support the trial court's findings and ultimate decision – including its finding that the EUO focused on medical issues and its finding of no reasonable foundation for the delay in paying benefits. *See Smith v. Smith*, 450 S.W.3d 729, 732 (Ky. App. 2014) (appeals must be resolved based on the record on appeal and missing items in the record must be presumed to support the trial court's decision).

While we decline to speculate on what would be the proper result had the required preservation statement been provided, we cannot say that the end result on the interest issue was so shocking or judicially intolerable that a manifest injustice resulted. *See Summe v. Gronotte*, 357 S.W.3d 211, 216 (Ky. App. 2011) (noting lack of required preservation statement and concluding that even if errors existed, they were not so shocking or judicially intolerable as to amount to manifest injustice).

**Attorney Fee Award Did Not Result in Manifest Injustice**

Allstate points out that it made payments to medical providers shortly before the suit was filed. Based on this, it argues the trial court erred in awarding Brown a reasonable attorney fee. But Allstate's making payments before suit was filed does not necessarily preclude an attorney fee award. An attorney fee may also be awarded if overdue benefits are paid after receiving notice of counsel's representation if denial or delay is without reasonable foundation.

KRS 304.39-220(1) provides in pertinent part:

> If overdue benefits are recovered in an action against the reparation obligor or paid by the reparation obligor after receipt of notice of the attorney's representation, a reasonable attorney's fee for advising and representing a claimant on a claim or in an action for basic or added reparation benefits may be awarded by the court if the denial or delay was without reasonable foundation.

Allstate paid about $6,800 to Brown's medical providers in early August 2019, stating these payment amounts included 12% interest and thus admitting the payments were overdue. These overdue payments occurred six months after Allstate received notice of Brown's counsel's representation and began receiving medical bills. And the trial court later determined that Allstate's delay in making payments was without reasonable foundation. Thus, the basic requirements were met for the trial court to award a reasonable attorney fee under KRS 304.39-220.

-14-

Allstate asserts Brown did not require legal assistance to obtain payment of benefits and that her counsel's involvement had no bearing on her bills getting paid. Thus, it argues she was not entitled to an award of a reasonable attorney fee, citing dicta in *Phoenix Healthcare of Kentucky, L.L.C. v. Kentucky Farm Bureau Mutual Insurance Company*, 120 S.W.3d 726, 727 (Ky. App. 2003) (in affirming dismissal of an Unfair Claims Settlement Practices Act claim as the MVRA provided the exclusive remedy for the insurer's/reparations obligor's delay in paying medical bills, stating "KRS 304.39-220 allows a claimant to recover reasonable attorney's fees if legal assistance is required to recover payment"). No actual or requested attorney fee award under KRS 304.39-220 was at issue in *Phoenix Healthcare*. And in any event, the record before us does not indisputably show that Brown had no need for legal assistance or that counsel's involvement was of no consequence in obtaining payment of benefits – particularly since Allstate requested to examine Brown under oath, did not make payments until shortly before suit was filed, and did not inform Brown's counsel of payments made until the same day it received service of the complaint. There was no manifest injustice in the trial court's decision to award a reasonable attorney fee.

Furthermore, Allstate has not raised in its appellate briefs any specific issues about the amount of the attorney fee awarded – which was based on Brown's counsel's affidavit about billing rates and detailed time entries. Nor can

-15-

we say the amount was shocking or judicially intolerable or resulted in manifest injustice.

We decline to address other arguments raised by the parties in their appellate briefs as unnecessary to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's judgment.

COMBS, JUDGE, CONCURS.

CETRULO, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

CETRULO, JUDGE, DISSENTING: Respectfully, I dissent from the majority Opinion herein. At the outset, I do not agree that this matter can only be reviewed for palpable error resulting in manifest injustice. The matter was heard on summary judgment, with both parties arguing for same in briefs filed before the Jefferson Circuit Court. The record is easily reviewable, and all arguments presented herein were presented to the trial court. I believe the proper standard of review for this Court, as both parties asserted in their briefs, is *de novo*. *Rhodes v. Commonwealth*, 417 S.W.3d 762, 764-65 (Ky. App. 2013) (citing *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007)). Based upon that review, I would reverse the Opinion below.

## PROCEDURAL HISTORY

Ms. Brown's accident occurred on January 24, 2019. She was a listed driver under a policy of insurance issued by Allstate and thus was entitled to submit a claim for PIP benefits. On February 7, counsel for Ms. Brown sent a letter to Allstate advising of his representation and directing that no payments be made to any emergency room or initial hospital treatment, but rather that all PIP payments be reserved for other providers, such as physical therapy and chiropractic care and lost wages. She sought treatment at Chambers Medical and River City Chiropractic, and those providers began submitting bills to Allstate in February. On February 25, 2019, well within 30 days, Allstate requested an EUO from counsel for the appellee to which he promptly agreed. Throughout the pleadings, the attorneys for Brown agreed that this was proper and timely.[8] It is clear from the record that the attorneys were jointly working together on scheduling, but the EUO was not actually scheduled until June 14, 2019. Later, on the very day of the examination, correspondence from Brown's attorney advised Allstate that Brown did not intend to rush Allstate, but that she would be seeking payment of the bills promptly upon Allstate's review of the transcript and would be seeking interest.

---

[8] Allstate properly followed the MVRA in timely requesting the examination under oath and had a reasonable basis to delay plaintiff's payments until she submitted to an EUO. (Brown's Motion for Summary Judgment, p. 10-11, R. at 116.)

All bills were in fact then paid on August 5 or 8 to the providers. Interest was actually paid by Allstate as well, although to the providers rather than to Ms. Brown. Reductions were also secured on the bills by Allstate, an action that all parties agree is permissible under KRS 304.39-245. It appears from the briefs by both parties that the EUO was responsible at least in part for the reduction, as the investigation revealed that some of the charges were for services that were not actually performed by the provider. The reduced amounts were accepted as payment in full by the providers, although some interest was included in the payments to the providers as well.

A couple of weeks after payments had been made, this lawsuit was filed by Brown asserting that **she** was owed the interest on the overdue payments and seeking approximately $2,500 in attorney fees incurred up to the time of the filing and/or the aforementioned payments. The parties both filed numerous briefs and motions in the court below and ultimately, the trial court did not issue its order until over a year later in October of 2020. The court held that Allstate did not have a reasonable foundation for delaying payment because the EUO exceeded the scope permitted by law. The court below further held that Allstate was required to pay interest of 12% from March 14 to June 14, 2019, the date of the EUO, and 18% interest from June 14 to August 8, 2019. Attorney fees were ordered to be paid from June 14, 2019 to May 19, 2020, the date that the motion for attorney fees

-18-

was made in this litigation. Brown's attorney then submitted a bill and sought and was awarded $20,391 in fees, plus the interest.

This case presents a question of statutory construction and the application of the law to essentially undisputed facts. It also presents a question that both parties and the court below have stated is one of first impression, *i.e.*, to whom is the interest to be paid. As the trial court noted, the MVRA is silent on this issue, and this silence "creates an interesting question of law and a potentially problematic issue of public policy." The trial court went on to note that requiring the reparation obligor to pay the interest penalty directly to the claimant is an imperfect means of filling that statutory void as the MVRA provides that a person is only entitled to PIP benefits if she sustains a loss. "Loss" is defined as accrued economic loss which this insured did not sustain. KRS 304.39-020(5). Nonetheless, the court below recognized it has also been held that the medical providers lack standing to sue for the interest. *See Neurodiagnostics, Inc. v. Ky. Farm Bureau Mut. Ins. Co.*, 250 S.W.3d 321 (Ky. 2008). Thus, the court reasoned, the penalty should have been paid to the party who has standing under KRS 304.39-210. I would find no fault with that portion of the trial court's order.

However, as the trial court noted, this was an area of first impression and the statute itself is silent on this question. The payment by Allstate was made before this action was even filed but was simply made to the carrier instead of the

insured. The parties all agree it was unclear where the interest was to be paid, and both parties were entitled to litigate over that issue.

Secondly, it appears that the award of attorney fees was based upon the mistaken conclusion of the trial court that the EUO was improper and that it extended beyond the limited scope permitted by KRS 304.39-280(3). With that, I must disagree. Allstate had the absolute right to conduct an EUO as a condition precedent to paying the PIP benefits. *Adams*, 526 S.W.3d 63. Here, the carrier promptly, and in accord with the statute, advised the insured of its request to conduct an EUO pursuant to the policy provisions. The insured, through counsel, promptly agreed to cooperate. The fact that the insurer then did not have to petition the court for permission to proceed should not in any way be seen as violative of KRS 304.39-280(3) which is what the trial court concluded.

Our Supreme Court previously held that "Allstate [sought] discovery from [its insured], *i.e.*, testimony . . . provided under oath, which is exactly the function of KRS 304.39-280(3), the statute under which Allstate began this case." *Allstate Prop. & Cas. Ins. Co. v. Kleinfeld*, 568 S.W.3d 327, 332 (Ky. App. 2019). Similarly, in *Government Employees Insurance Company v. Sanders*, 569 S.W.3d 923, 926 (Ky. 2018), the Court specifically held that when requested and addressed by the policy, the injured party was required to submit to questioning under oath as a condition precedent to coverage. Allstate began investigating this claim in

-20-

accordance with the MVRA by immediately requesting an EUO pursuant to the policy and in keeping with the Supreme Court's earlier ruling in *Adams*, 526 S.W.3d 63.

While they did so with the risk that they would then owe penalties under KRS 304.39-210(2) for interest and under KRS 304.39-220 for attorney fees for delay in payment, it was not until after the EUO was completed and the information was available that Allstate had any responsibility to pay the claimed benefits under the statute. Based upon the statute, the delay after the EUO was only approximately 15 days.

Certainly, Allstate should not be penalized because it did not have to seek judicial intervention and the parties were able to proceed with the EUO without "unnecessarily involving the courts." *Adams*, 526 S.W.3d at 66 (Ky. 2017). Such agreement and cooperation of the parties should be applauded, not used as a basis to award more in fees and interest than if Allstate had petitioned the court (which it was not required to do since Brown consented). Furthermore, where, as here, a reasonable basis exists in the law for disputing whether the interest was owed to Ms. Brown, who had no economic loss and paid no bills, or whether it was owed to the provider itself, I believe that the trial court's award of

attorney fees for over a year of subsequent litigation that Brown initiated was clearly erroneous.[9]

Furthermore, it is not clear that benefits were withheld to Brown "without a reasonable foundation" as required in order to support any award of fees under KRS 304.39-220. That statute specifically states:

> if *overdue benefits* are recovered in an action against the reparation obligor . . . after receipt of notice of the attorney's representation, a reasonable attorney's fee for *advising and representing a claimant . . .* in *an action for . . . benefits* may be awarded . . . if the denial or delay was without reasonable foundation.

(Emphasis added.) This action was not filed for recovery of *overdue benefits* because they had already been paid. It was filed solely to seek attorney fees and interest that had already been paid to the providers under the statute. What constitutes a reasonable fee is generally within the discretion of the court and reviewed for an abuse of discretion. *Spees v. Kentucky Legal Aid*, 274 S.W.3d 447, 451 (Ky. 2009). However, an abuse of discretion occurs if the court's ruling

---

[9] This case is indistinguishable, in my view, to this Court's non-published opinion in *Grange Property & Casualty Insurance Company v. Chappell*, No. 2017-CA-001418-MR, 2019 WL 645911 (Ky. App. Feb. 15, 2019). Therein, we reversed a similar summary judgment awarding attorney fees and 18% interest because the trial court had found that Grange was required to petition the court for a discovery order to obtain information to determine the validity of Chappell's claims. Citing to *Adams*, this Court held that recovery of interest and recovery of attorney fees are predicated on two things – the benefits must be overdue because of failure to pay within 30 days after receipt of reasonable proof and the delay or denial must have been without reasonable foundation. Because the court below concluded that Grange was required to petition the court for the information (just as this trial court concluded), it never made the requisite finding that the delay was without reasonable foundation.

-22-

is unsupported by sound legal principles or arbitrary or unreasonable. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Because the court below concluded that Allstate was required to petition the court for the EUO, the requisite finding that the delay was without reasonable foundation and in violation of the statute is clearly erroneous and not supported by sound legal principles. For the foregoing reasons, I would reverse the judgment of the trial court below.

BRIEFS FOR APPELLANT:

Brian D. Stempien
J. Michael Wells
Louisville, Kentucky

BRIEF FOR APPELLEE:

Kevin M. Adams
Cornelius Kearns
Louisville, Kentucky